UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL THETFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-CV-0405-CVE-FHM |
| | ) |
| JACK HOEHNER, individually and in his | ) |
| official capacity, JEFF DOWNS, individually | ) |
| and in his official capacity, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is the motion for summary judgment (Dkt. # 17) filed by defendants Jack Hoehner and Jeff Downs, officers employed with the Tulsa Police Department. Defendants move for summary judgment on plaintiff Samuel Thetford's claims pursuant to 42 U.S.C. § 1983 and on his state law claims of assault and battery, false imprisonment, and malicious prosecution.

### I.

On August 30, 2004, Todd A. Knight, a "Fugitive Recovery Agent" employed with A-Aaron's Bail Bonds, arrived at a house located at 507 North Birmingham Avenue in Tulsa, Oklahoma, where he identified Donald Knight, a fugitive. What Todd Knight observed while the residence was under surveillance is disputed, as are many of the facts in this case. Defendants represent that Todd Knight observed plaintiff working, with Donald Knight, for approximately twenty-five minutes, on a car parked in the driveway of the house. They also state that Todd Knight watched plaintiff and Donald Knight walk together from the driveway to a car in the street and then back to the car in the driveway. Plaintiff disputes this account. He insists that he went to the home,

which belonged to his mechanic, Britt Snyder, to consult with Snyder about repairs to plaintiff's car. While he was there, a stranger informed him that Snyder was not at home. Plaintiff also claims that the stranger -- the parties' briefing leaves little doubt that it was Donald Knight -- said he was working on Snyder's backyard fence. According to plaintiff, after this brief exchange, the stranger returned to the backyard and plaintiff decided to wait at the house for Snyder's return.

The parties agree that Todd Knight called the Tulsa Police Department to seek assistance in arresting Donald Knight. Somewhere between 7:30 and 8:00 p.m., police officers, including defendants, Officers Downs and Hoehner, arrived at the residence. Upon arrival, defendants began questioning plaintiff about Donald Knight's whereabouts.

At this point, the parties' stories again diverge. Defendants claim that plaintiff informed them that no one had been there with him, but upon being told that Todd Knight had seen him with Donald Knight, he told defendants that Donald Knight must have left by way of the back fence. Defendants claim that the change in plaintiff's story raised their suspicions. That discrepancy, coupled with Todd Knight's account of seeing plaintiff in front of the house with Donald Knight, led defendants to believe that plaintiff was assisting Donald Knight in evading law enforcement. Defendants placed plaintiff under arrest for harboring a fugitive, before proceeding to search the backyard of the residence.[1] They deny that they used any additional force against plaintiff after putting him in handcuffs.

Plainitff, for his part, states that, in response to defendants' aggressive questioning, he informed them that he did not know Donald Knight, having never met him. After being shown a

---

[1] Neither party provides any information as to when defendants informed plaintiff of his Miranda rights, if at all.

picture, plaintiff informed defendants that the individual in the photograph looked like the stranger who had been working on the fence in the backyard. He claims that, after placing him in handcuffs, defendants began physically assaulting him in an effort to elicit information.

It is agreed that when defendants conducted a search of the backyard, they discovered Donald Knight in the crawl space underneath the back porch, which was approximately eight to ten feet from plaintiff. Plaintiff insists, nevertheless, that he did not see Donald Knight conceal himself under the back porch. Defendants took plaintiff into custody, and he was charged with harboring a fugitive.

Plaintiff alleges that defendants detained him without probable cause and physically assaulted him in violation of the Fourth Amendment.[2] Defendants move for summary judgment on plaintiff's section 1983 claim on the ground that they are entitled to qualified immunity, and on his remaining state law claims on the ground that they used no force against plaintiff and had probable cause to arrest him.

---

[2] Plaintiff also claims defendants' alleged conduct violated his Eighth and Fourteenth Amendment rights. The Eighth Amendment is principally directed at the treatment of individuals post-conviction. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("After conviction, the Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.") (internal quotation marks omitted) (omissions in original); Whitley v. Albers, 475 U.S. 312, 327 (1986) (noting that the Eighth Amendment is "specifically concerned with the unnecessary and wanton infliction of pain in penal institutions"). Claims that police officers lacked probable cause or utilized excessive force in the course of a criminal investigation are evaluated under the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment. See Graham, 490 U.S. at 395 ("[A]*ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original); Pino v. Higgs, 75 F.3d 1461, 1469 (10th Cir. 1996) ("[A] constitutional challenge based on a claim that a prosecution lacked probable cause must be brought under the specific guarantees of the Fourth Amendment rather than the generalized guarantee of substantive due process [of the Fourteenth Amendment].").

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendants argue that the doctrine of qualified immunity shields them from suit under section 1983.[3] "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted). A defendant's entitlement to qualified immunity turns upon a two-part inquiry: first, whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right," and, second, "whether the right was clearly established" at the time of the alleged conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Phillips v. James, 422 F.3d 1075, 1080 (10th Cir. 2005).

---

[3] Defendants also argue that summary judgment is appropriate because plaintiff has not demonstrated that the existence of a municipal policy caused his injury, an argument appropriately directed at a claim against the city of Tulsa. The Court assumes plaintiff never intended to recover against the city, however. He has not alleged the existence of a municipal policy or custom that caused his injury, a necessary showing for municipal liability. See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983."). Nor has he alleged that defendants are officials responsible for establishing final government policy such that their actions could be imputed to the city for the purposes of liability. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986) (noting that a city official must be "responsible for establishing final government policy respecting such activity before the municipality can be held liable"). Under these circumstances, plaintiff's decision to name both defendants in their official capacities, an action tantamount to naming the city of Tulsa as a defendant, Watson v. City of Kansas City, Kansas, 857 F.2d 690, 695 (10th Cir. 1988), is curious.

5

**A.**

As to the first prong, the Court must determine if, based upon the allegations of plaintiff regarding defendants' conduct, defendants violated his constitutional rights. Plaintiff alleges that defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures by seizing him without probable cause and by using excessive force in the course of that seizure.[4] The Court considers each claim in turn.

Probable cause exists to arrest an individual exists "only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Cortez, 438 F.3d at 989; see also Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) ("The primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the [arresting] offic[er].") (internal quotation marks omitted) (alterations in original).

Defendants arrested plaintiff for harboring a fugitive. Under Oklahoma law,

> [a]ny person who shall knowingly feed, lodge, clothe, arm, equip in whole or in part, harbor, aid, assist or conceal in any manner any person guilty or any felony, or outlaw, or fugitive from justice, or any person seeking to escape arrest for any felony committed within this state or any other state or territory, shall be guilty of a felony punishable by imprisonment at hard labor in the State Penitentiary for a period not exceeding ten (10) years.

Okla. Stat. tit. 21, § 440. In determining whether defendant had probable cause to arrest for the offense of harboring a fugitive, the Court takes a favorable view of plaintiff's recitation of the facts,

---

[4] Neither party addresses the issue of plaintiff's "seizure" for the purposes of the Fourth Amendment. The Court concludes that defendants' use of handcuffs made their encounter an arrest, not an investigative detention, requiring a showing of probable cause. Cortez v. McCauley, 438 F.3d 980, 989 (10th Cir. 2006) ("The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest.") (internal quotation marks omitted).

including his suggestion that Todd Knight communicated incorrect information to defendants regarding plaintiff's interaction with Donald Knight. Undisputed, however, is the defendants' assertion that they relied upon Todd Knight's account that plaintiff worked with Donald Knight on a car in front of the house for approximately half an hour. Also uncontested is defendants' claim that they had no reason to disbelieve the report of Todd Knight, since the fugitive recovery agent had accurately reported the existence of multiple warrants for Donald Knight's arrest. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. # 22), Ex. A, Deposition of Jeff Downs, at 42. When defendants confronted plaintiff regarding Donald Knight's whereabouts, plaintiff stated that he did not know Donald Knight. Confronted with this conflicting information and plaintiff's later change in his statement, defendants could have reasonably suspected that plaintiff knew Donald Knight and was assisting in concealing his location. Defendants had probable cause to believe that plaintiff was unlawfully harboring a fugitive as that offense is defined under Oklahoma law, and their seizure of plaintiff was not unreasonable.[5]

Plaintiff also alleges that defendants violated his Fourth Amendment right to be free from seizures effected via the use of excessive force. Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. Graham, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests." Id. at 395. Courts are to evaluate claims of excessive force utilizing a totality of the circumstances approach, considering, inter alia, the severity of the crime at issue,

---

[5] Defendants also cite to the discovery of Donald Knight under the back porch as a basis for their reasonable belief that plaintiff had committed the crime of harboring a fugitive. Defendants did not discover Donald Knight until after they had placed plaintiff in handcuffs, however.

7

whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Jiron v. City of Lakewood, 392 F.3d 410, 414-15 (10th Cir. 2004). In assessing the appropriateness of a police officer's use of force, a Court considers the circumstances from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Id. (internal citation and quotation marks omitted).

Defendants deny using any force against plaintiff in the course of his arrest. Plaintiff, in turn, claims that Officer Hoehner "physically assaulted [him] in the throat area," Plaintiff's Response to Defendants['] Motion for Summary Judgment and Brief in Support (hereinafter "Plaintiff's Response") (Dkt. # 20), Ex. A, Affidavit of Plaintiff Samuel Thetford, at ¶ 12, even though he offered no resistance. Equally vague variations on this statement constitute the extent of the information relating to the alleged physical assault. There is no evidence relating to the attack's duration or whether plaintiff sustained any injury as a result of the conduct.

This factual dispute alone does not require a denial of defendants' motion for summary judgment. Assuming, arguendo, the accuracy of plaintiff's account, the Court must still consider whether the acts complained of were excessive under the totality of the circumstances approach outlined above. Although the crime of harboring a fugitive is a relatively serious crime – carrying a possible penalty of up to ten years imprisonment and arguably creating the risk of violence in the course of committing the offense – there is no evidence that plaintiff either offered resistance to defendants' efforts to detain him or attempted to impede their search for Donald Knight, making Officer Hoehner's use of force, if it occurred, seem disproportionate.

Moreover, the Court is cognizant of the Tenth Circuit's caution that "[a] qualified immunity defense will not succeed in inducing a court to grant summary judgment when the facts . . . , considered collectively, present an incomplete picture of the [relevant] circumstances." Olsen, 312 F.3d at 1314. What evidence exists in the summary judgment record indicates that Officer Hoehner may have assaulted plaintiff without justification. There is absolutely no evidence that Officer Downs had any role in the alleged assault of plaintiff, however.

The Court's analysis of qualified immunity as to Officer Downs is at an end. Jiron, 392 F.3d at 414 ("If the plaintiff fails to meet his or her burden on this threshold inquiry, the qualified immunity inquiry comes to an end."). Summary judgment on the ground of qualified immunity for the section 1983 claim is granted as to Officer Downs.[6] As to plaintiff's excessive force allegation against Officer Hoehner, the Court proceeds to the second prong of the qualified immunity inquiry, that is, whether the right at issue was clearly established.

**B.**

To determine whether a right was "clearly established" for the purposes of qualified immunity, the Court must evaluate the objective reasonableness of the action at the time of the alleged violation and consider whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right. Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001).

The right to be free from unreasonable seizures, including seizures involving excessive force, is enshrined in the Fourth Amendment and is a well-established legal principle. See Saucier, 533

---

[6] Plaintiff's response to defendant's summary judgment motion makes passing, generic references to assault and brutality by both defendants. The only evidence submitted by plaintiff, his signed affidavit, identifies only Officer Hoehner as the perpetrator of that brutality.

9

U.S. at 201-02 ("[T]here is no doubt that Graham v. Connor . . . clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."); Holland, 268 at 1196 ("As a general proposition, the law that a search or seizure must be objectively 'reasonable' under all circumstances has been 'clearly established' for a long time."). To deny an officer qualified immunity, however, there must be a showing that a reasonable officer would understand that his conduct was a violation of the legal principles governing seizures. Id.

Under plaintiff's statement of the relevant facts, Officer Hoehner physically assaulted him in the throat area, even though plaintiff offered no resistance to the officers' arrest or investigation. Plaintiff's Response (Dkt. # 20), Ex. A, Affidavit of Plaintiff Samuel Thetford, at ¶12. Although courts have acknowledged "that the right to make an arrest or investigatory stop necessarily caries with it the right to use some degree of physical coercion or threat thereof to effect it," Saucier, 533 U.S. at 208, it is unclear why any amount of force beyond the physical contact inherent in placing an individual in handcuffs would be necessary against a suspect who offers no resistance. If the facts occurred as plaintiff alleges, Officer Hoehner had no "legitimate justification under the law for acting as he did." Holland, 268 F.3d at 1196. Further, the Court cannot conclude that Officer Hoehner could have reasonably misunderstood the law to permit an assault on a suspect offering no resistance to arrest. See id. (noting that qualified immunity provides protection for "reasonable mistakes" as to the legal constraints on police conduct).

If a plaintiff succeeds in establishing a constitutional violation and that the constitutional right at issue was clearly established at the time of the alleged conduct, the burden shifts to the defendant to demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Cortez, 438 F.3d at 988. Officer Hoehner has failed to make that

10

showing as to plaintiff's claim of excessive force. At the very least, there is a fundamental dispute over whether he utilized force against plaintiff at all during the course of plaintiff's arrest. Moreover, defendant has failed to quiet all disputed issues of material fact relating to the appropriateness of any physical force against plaintiff under the circumstances. Olsen, 312 F.3d at 1314 ("[T]his court will not approve summary judgment in excessive force cases – based on qualified immunity or otherwise – if the moving party has not quieted all disputed issues of material fact.").

The Court concludes that plaintiff has failed to meet its burden as to Officer Downs's entitlement to qualified immunity and determines that he is, therefore, entitled to qualified immunity as to plaintiff's claim under section 1983. Defendants' summary judgment motion is denied as to plaintiff's section 1983 claim of excessive force against defendant Officer Hoehner.

**IV.**

Defendants move for summary judgment on plaintiff's claim of assault and battery, as defined under Oklahoma law. See Okla. Stat. tit. 21, §§ 641-642. By law, an action for assault and battery will not lie for the use of force when either "necessarily committed by a public officer in the performance of any legal duty, or by any person assisting such officer or acting by such officer's direction," Okla. Stat. tit. 21, § 643(1), or "necessarily committed by any person in arresting one who has committed any felony, and delivering such person to a public officer competent to receive such person in custody," tit. 21, § 643(2).

Plaintiff has provided evidence of only Officer Hoehner's alleged use of force against him, and the Court grants summary judgment as to plaintiff's assault and battery claim against Officer Downs for that reason. As to plaintiff's claim against Officer Hoehner, both exceptions provided under section 643 require a showing that the use of force was "necessarily" committed. As the

11

Court has determined that there are genuine issues of material fact relating to the reasonableness of Officer Hoehner's use of force, if any, in arresting plaintiff, summary judgment on plaintiff's claim of assault and battery as to that defendant is inappropriate.

## V.

Defendants correctly point out that, under Oklahoma law, an action for false imprisonment is based upon detention that is "purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law." Roberts v. Goodner's Wholesale Foods, Inc., 50 P.3d 1149, 1151 n.3 (Okla. Civ. App. 2002). The Court assumes that plaintiff's claim is, in fact, a claim for false arrest by defendants. To succeed on a claim of false arrest, a plaintiff must demonstrate a lack of probable cause to arrest. Id. at 1151-52; Irwin v. SWO Acquisition Corp., 830 P.2d 587, 590 (Okla. Civ. App. 1992). The Court has already determined, as a matter of law, that defendants had probable cause to arrest plaintiff for harboring a fugitive, and, therefore, grants summary judgment on plaintiff's claim of false imprisonment, reconstrued as a claim for false arrest.

## VI.

A plaintiff seeking relief for malicious prosecution must demonstrate that (1) defendant maliciously instituted the action; (2) without probable cause; (3) which the plaintiff successfully defended; and (4) with resulting damage to the plaintiff. Roberts, 50 P.3d at 1152. As noted, the Court has previously determined that defendants had probable cause to believe that plaintiff was engaged in the crime of harboring a fugitive when they arrested him based upon the report of Todd Knight and the apparent inconsistency in the statement provided them by plaintiff. Summary judgment is, therefore, appropriate as to plaintiff's claim of malicious prosecution.

**VII.**

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Dkt. # 17) is hereby **granted in part** and **denied in part**. It is granted in its entirety as to defendant Officer Jeff Downs, and he is hereby **terminated** from this action. As to defendant Officer Jack Hoehner, it is granted as to plaintiff's claims of false imprisonment and malicious prosecution, and denied as to his claims of excessive force pursuant to 42 U.S.C. § 1983 and assault and battery.

**IT IS FURTHER ORDERED** that, for the reasons outlined in footnote 3, supra, plaintiff's section 1983 claim against Officer Hoehner in his official capacity is hereby **dismissed.** Thus, Officer Jack Hoehner **remains** as a defendant in his individual capacity in plaintiff's claim for excessive force under 42 U.S.C. § 1983, and assault and battery.

**DATED** this 12th day of April, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT